No. 20-1570

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

RUFUS WEST, also known as MUSLIM MANSA LUTALO IYAPO,
Plaintiff-Appellant,

v.

JOHN KIND, Security Director, et al.,
Defendants-Appellees.

On Appeal From The United States District Court
For The Eastern District of Wisconsin
Case No. 2:17-cv-00482
The Honorable Pamela Pepper

**BRIEF OF *AMICI CURIAE***
**THE AMERICAN CIVIL LIBERTIES UNION FOUNDATION AND**
**THE AMERICAN CIVIL LIBERTIES UNION OF WISCONSIN**
**FOUNDATION IN SUPPORT OF DEFENDANTS-APPELLEE'S JOHN KIND,**
**ET AL., SEEKING AFFIRMANCE OF THE DISTRICT COURTS ORDER**

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
John A. Knight (jaknight@aclu.org)
*Counsel of record*
150 N. Michigan Ave., Ste. 600
Chicago, IL 60601
312-201-9740

Taylor Brown (tbrown@aclu.org)
Lindsey Kaley (lkaley@aclu.org)
125 Broad St., 18th Floor
New York, NY 10004
212-549-2500

AMERICAN CIVIL LIBERTIES UNION OF
WISCONSIN FOUNDATION
Laurence J. Dupuis (ldupuis@aclu-wi.org)
207 E. Buffalo Street, Ste. 325
Milwaukee, WI 53202
414-272-4032

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>20-1570</u>

Short Caption: <u>Rufus West v. John Kind, et al.</u>

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
<u>The American Civil Liberties Union Foundation, Inc.</u>

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)     If the party, amicus or intervenor is a corporation:

     i)     Identify all its parent corporations, if any; and
     <u>N/A</u>

     ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
     <u>N/A</u>

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
<u>N/A</u>

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
<u>N/A</u>

Attorney's Signature: <u>/s/ John A. Knight</u>      Date: <u>8/24/2020</u>

Attorney's Printed Name: <u>John A. Knight</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: <u>150 N. Michigan Ave., Ste. 600</u>

     <u>Chicago, IL 60601</u>

Phone Number: <u>312-201-9740</u>      Fax Number: <u>312-535-6571</u>

E-Mail Address: <u>jaknight@aclu.org</u>

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-1570

Short Caption: Rufus West v. John Kind, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    The American Civil Liberties Union Foundation, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    N/A

Attorney's Signature: /s/ Taylor Brown    Date: 8/24/2020

Attorney's Printed Name: Taylor Brown

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 125 Broad St., 18th Floor

    New York, NY 10004

Phone Number: 212-549-2500    Fax Number: 212-549-2646

E-Mail Address: tbrown@aclu.org

    rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-1570

Short Caption: Rufus West v. John Kind, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
The American Civil Liberties Union Foundation, Inc.

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
N/A

Attorney's Signature: /s/ Lindsey Kaley    Date: 8/24/2020

Attorney's Printed Name: Lindsey Kaley

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]    No [✔]

Address: 125 Broad St., 18th Floor

New York, NY 10004

Phone Number: 212-549-2500    Fax Number: 212-549-2646

E-Mail Address: lkaley@aclu.org

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 20-1570

Short Caption: Rufus West v. John Kind, et al.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
        The American Civil Liberties Union of Wisconsin, Inc.

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

(3)     If the party, amicus or intervenor is a corporation:

        i)     Identify all its parent corporations, if any; and
               N/A

        ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
               N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
        N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
        N/A

Attorney's Signature: /s/ Laurence J. Dupuis          Date: 8/24/2020

Attorney's Printed Name: Laurence J. Dupuis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ☐     No ☑

Address: 207 E. Buffalo St., Ste. 325

         Milwaukee, WI 53202

Phone Number: 414-272-4032          Fax Number: 414-272-0182

E-Mail Address: ldupuis@aclu-wi.org

rev. 12/19 AK

# TABLE OF CONTENTS

CIRCUIT RULE 26.1 DISCLOSURE STATEMENTS.....................................................i

TABLE OF CONTENTS..............................................................................................v

TABLE OF AUTHORITIES .......................................................................................vi

STATEMENT OF *AMICI CURIAE* .......................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

ARGUMENT ................................................................................................................ 3

    I.      Transgender People Face Pervasive Discrimination in Every
            Facet of Life, Including Employment ...................................................... 3

    II.     The WDOC Has a Compelling Interest In Preventing
            Discrimination Against Transgender Employees ................................... 7

          A.     The WDOC Has a Compelling Interest In Prohibiting
                 Discrimination Against Transgender Employees ........................ 7

          B.     The WDOC Has a Compelling Interest in Complying
                 with Legal Protections Against Discrimination in
                 Employment for Transgender People ......................................... 11

          C.     The WDOC's Equal Treatment of Mr. Buhle was the Least
                 Restrictive Means of Furthering Their Interest in Preventing
                 Discrimination Against Transgender Employees ..................... 15

CONCLUSION.......................................................................................................... 17

CERTIFICATE OF COMPLIANCE .......................................................................... 19

CERTIFICATE OF SERVICE .................................................................................. 20

# TABLE OF AUTHORITIES

## Cases

*Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*,
  No. 18-13592, 2020 WL 4561817 (11th Cir. Aug. 7, 2020) ............................ 13

*Adkins v. City of N.Y.*,
  143 F. Supp. 3d 134 (S.D.N.Y. 2015) ................................................................ 13

*Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*,
  481 U.S. 537 (1987) ............................................................................................ 9

*Bd. of Educ. v. U.S. Dep't of Educ.*,
  208 F. Supp. 3d 850 (S.D. Ohio 2016) ............................................................. 13

*Bob Jones University v. United States*,
  461 U.S. 574 (1983) .................................................................................... 8, 17

*Bostock v. Clayton Cnty., Georgia*,
  140 S. Ct. 1731 (2020) ...............................................................................*passim*

*Bostock v. Clayton Cnty., Georgia*,
  Amici Curiae Brief for Scholars who Study the Transgender Population in
  Support of Respondent, 140 S. Ct. 1731 (2020) (No. 18-107) ........................... 6

*Borzych v. Frank*,
  439 F.3d 388 (7th Cir. 2006) ............................................................................. 7

*Boyden v. Conlin*,
  341 F. Supp. 3d 979 (W.D. Wis. 2018) ......................................................... 3, 12

*Burwell v. Hobby Lobby Stores, Inc.*,
  573 U.S. 682 (2014) ................................................................................ 8, 9, 17

*City of Cleburne v. Cleburne Living Ctr.*,
  473 U.S. 432 (1985) ......................................................................................... 12

*Cutter v. Wilkinson*,
  544 U.S. 709 (2005) ................................................................................... 16, 17

*Doe v. Boyertown Area Sch. Dist.*,
  139 S. Ct. 2636 (2019) ..................................................................................... 11

*Doe by & through Doe v. Boyertown Area Sch. Dist.*,
    897 F.3d 518 (3d Cir. 2018) .......................................................... 10, 16

*EEOC v. Fremont Christian Sch.*,
    781 F.2d 1362 (9th Cir. 1986) ............................................................ 17

*EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*,
    884 F.3d 560 (6th Cir. 2018) ......................................................... 11, 17

*Estate of Thornton v. Caldor, Inc.*,
    472 U.S. 703 (1985) ..................................................................... 16, 17

*Evancho v. Pine-Richland Sch. Dist.*,
    237 F. Supp. 3d 267 (W.D. Pa. 2017) ................................................. 13

*F.V. v. Barron*,
    286 F. Supp. 3d 1131 (D. Idaho 2018) ............................................... 13

*Flack v. Wisconsin Department of Health Services*,
    328 F. Supp. 3d 931 (W.D. Wisc. 2018) ............................................ 4, 5

*Frontiero v. Richardson*,
    411 U.S. 677 (1973) .......................................................................... 8

*Grimm v. Gloucester Cnty. Sch. Bd.*,
    302 F. Supp. 3d 730 (E.D. Va. 2018) ................................................. 13

*Heart of Atlanta Motel, Inc. v. United States*,
    379 U.S. 241 (1964) ...................................................................... 8, 10

*Heckler v. Mathews*,
    465 U.S. 728 (1984) ...................................................................... 8, 10

*Hecox v. Little*,
    2020 WL 4760138 (D. Idaho 2020) ..................................................... 6

*Karnoski v. Trump*,
    926 F.3d 1180 (9th Cir. 2019) ........................................................... 13

*M.A.B. v. Bd. of Educ. of Talbot Cnty.*,
    286 F. Supp. 3d 704 (D. Md. 2018) .................................................... 13

*Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*,
    138 S. Ct. 1719 (2018) ................................................................... 8, 9

*Mississippi University for Women v. Hogan,*
    458 U.S. 718 (1982) .................................................................. 8

*N. Contracting, Inc. v. Ill.,*
    473 F.3d 715 (7th Cir. 2007) ................................................. 15

*Newman v. Piggie Park Enterprises, Inc.,*
    390 U.S. 400 .......................................................................... 17

*Norsworthy v. Beard,*
    87 F. Supp. 3d 1104 (N.D. Cal. 2015) ................................. 13

*N.Y. State Club Ass'n, Inc. v. City of N.Y.,*
    487 U.S. 1 (1988) ................................................................... 8

*Porter v. City of Chicago,*
    700 F.3d 944 (7th Cir. 2012) ................................................. 14

*Rayburn v. Gen. Conf. of Seventh Day Adventists,*
    772 F.2d 1164 (4th Cir. 1985) ............................................... 10

*Riley v. Nat'l Fed'n of the Blind,*
    487 U.S. 781 (1988) ............................................................... 15

*Roberts v. U.S. Jaycees,*
    468 U.S. 609 (1984) ....................................................... 7, 8, 9, 10

*Romer v. Evans,*
    517 U.S. 620 (1996) ............................................................... 12

*Stone v. Trump,*
    400 F. Supp. 3d 317 (D. Md. 2019) ..................................... 13

*United States v. Burke,*
    504 U.S. 229 (1992) .......................................................... 9, 15

*Univ. of Texas Sw. Med. Ctr. v. Nassar,*
    570 U.S. 338 (2013) ............................................................... 15

*Vision Church, United Methodist v. Vill. of Long Grove,*
    468 F.3d 975 (7th Cir. 2006) ................................................. 2

*Weeks v. Samsung Heavy Industries Co., Ltd.,*
    126 F.3d 926 (7th Cir. 1997) ................................................. 6

*Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*,
    858 F.3d 1034 (7th Cir. 2017) .......................................................... 4, 12, 13, 14

*Wolfson v. Concannon*,
    811 F.3d 1176 (9th Cir. 2016) .......................................................... 16

*Young v. N. Ill. Conf. of United Methodist Church*,
    21 F.3d 184 (7th Cir. 1994) .............................................................. 9

## Statutes

42 U.S.C. § 2000-cc .............................................................................*passim*

42 U.S.C. § 2000e-2(a) .......................................................................... 14

## Rules

Fed. R. App. P. 29 ................................................................................. 1

## Other Authorities

Colt Meier & Julie Harris, *Fact Sheet: Gender Diversity and Transgender Identity in Children 1*, http://www.apadivisions.org/division-44/resources/advocacy/transgender-children.pdf ................................................................. 3

Flores, A.R., et al., *How Many Adults Identify as Transgender in the United States?* Williams Institute (2016) ................................................................. 4

Grant, Jaime M., et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey.* Nat'l. Ctr. for Transgender Equal. and Nat'l Gay and Lesbian Task Force (2011) ........................................................ 5

*Guidelines for Psychological Practice with Transgender and Gender Nonconforming People*, 70 Am. Psychologist 832, 833 (2015) .................................... 3

Herman, J.L., et al., *Age of Individuals who Identify as Transgender in the United States*, Williams Institute (2017) ........................................................ 4

World Prof'l Ass'n for Transgender Health, *Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People*, 5 (7th Version, 2011), https://www.wpath.org/media/cms/Documents/SOC%2v7/Standards%20of%20Care_V7%20Full%20Book_English.pdf ................................................. 3

## STATEMENT OF *AMICI CURIAE*

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with nearly two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU of Wisconsin is one of the ACLU's statewide affiliates with approximately 13,000 members. The ACLU and the ACLU of Wisconsin (collectively, "*Amici*") submit this *amicus curiae* brief in support of Defendants-Appellees,[1] seeking affirmance of the district court's order. As organizations that advocate for First Amendment liberties, prisoners' rights, as well as equal rights for lesbian, gay, bisexual, and transgender ("LGBT") people, *Amici* and their members have a strong interest in the application of proper standards when evaluating constitutional and statutory challenges involving civil rights and civil rights laws.

## SUMMARY OF ARGUMENT

This case arose following a security search performed by male corrections staff on Plaintiff-Appellant, Rufus West a/k/a Muslim Mansa Lutalo Iyapo, at the Green Bay Correctional Institution, where he is incarcerated in the custody of the Wisconsin Department of Corrections ("WDOC"). Mr. Iyapo alleges that corrections officer Issac Buhle, a transgender man, witnessed the search, violating his Islamic faith which mandates that no one, other than his wife, should see him undressed. Mr. Iyapo alleges that his free exercise of religion was substantially burdened, in

---

[1] Pursuant to Fed. R. App. P. 29, amici state that no counsel for a party authored this brief in whole or in part and that no person other than amici or their counsel made a monetary contribution to its preparation or submission.

violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc, and the First Amendment, by Mr. Buhle witnessing his nudity and that this violation occurred because of the WDOC's policy of treating all staff in accordance with their gender identity and assigning gender-specific duties accordingly.

Where a policy imposes a substantial burden on an individual's religious exercise, RLUIPA requires the state to show that it is narrowly tailored to further a compelling interest. *Vision Church, United Methodist v. Vill. of Long Grove*, 468 F.3d 975, 996 (7th Cir. 2006). In contrast, Mr. Iyapo's free exercise claim under the First Amendment requires him to first show that the policy is not "neutral and of general applicability" or "offend[s] the constitutional requirement for governmental neutrality" in its application. *Id.* Even assuming arguendo that the WDOC's policy of treating staff in accordance with their gender identity constitutes a substantial burden on Mr. Iyapo's free exercise of religion, the WDOC has a compelling governmental interest in combatting discrimination against transgender employees, rooted in the severity and widespread nature of the discrimination transgender people nationally and in Wisconsin. The policy—to treat employees consistently with the gender they identify—is consistent with that governmental interest. The Supreme Court has consistently recognized just such a compelling interest in eradicating discrimination—both to preserve individual dignity and for the well-being of society as a whole.

For these reasons, *Amici* urge this Court to affirm the District Court's March 20, 2020 Order Granting the Defendants-Appellees' Motion for Summary Judgement, Denying Plaintiff-Appellant's Motion for Summary Judgement, and Dismissing Plaintiff-Appellant's Case.

## ARGUMENT

### I. TRANSGENDER PEOPLE FACE PERVASIVE DISCRIMINATION IN EVERY FACET OF LIFE, INCLUDING EMPLOYMENT.

"[G]ender identity is the internal core sense of one's own sex, such as male or female. All human beings have a gender identity." *Boyden v. Conlin*, 341 F. Supp. 3d 979, 986 (W.D. Wis. 2018) (internal quotation marks removed). Gender identity is generally considered immutable and fixed at birth.[2] Cisgender individuals have a gender identity that is congruent with the sex they were assigned at birth.[3] Transgender individuals have a gender identity that is incongruent with the sex they were assigned at birth.[4] Through legal, social, and medical transition, transgender individuals are able to live with greater authenticity consistent with their gender identity.[5]

---

[2] Colt Meier & Julie Harris, *Fact Sheet: Gender Diversity and Transgender Identity in Children 1*, http://www.apadivisions.org/division-44/resources/advocacy/transgender-children.pdf.
[3] *Guidelines for Psychological Practice with Transgender and Gender Nonconforming People*, 70 Am. Psychologist 832, 833 (2015) [hereinafter referred to as "Am. Psychol. Ass'n Guidelines"].
[4] *Id.*
[5] World Prof'l Ass'n for Transgender Health, *Standards of Care for the Health of Transsexual, Transgender, and Gender-Nonconforming People*, 5 (7th Version, 2011), https://www.wpath.org/media/cms/Documents/SOC%2v7/Standards%20of%20Care_V7%20Full%20Book_English.pdf.

Approximately 1.4 million adults identify as transgender in the United States of America.[6] Wisconsin is home to approximately 19,150 of those transgender-identified adults[7] and 1,850 transgender-identified young people aged 13–17.[8] These numbers are likely under-representative of the true population sizes.

This Circuit has recognized that transgender people have faced pervasive and disparate amounts of discrimination, historically and presently. "There is no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity." *Whitaker v. Kenosha Unified Sch. Dist. No. 1 Bd. of Educ.*, 858 F.3d 1034, 1051 (7th Cir. 2017). In *Flack v. Wisconsin Department of Health Services*, citing strong evidence that transgender status is likely to be either a suspect or quasi-suspect classification, the district court found that "as a group, transgender individuals have been subjected to harassment and discrimination in virtually every aspect of their lives, including housing, employment, education, and health care." 328 F. Supp. 3d 931, 934 (W.D. Wisc. 2018).

Data from a report issued by the National Center for Transgender Equality and the National Lesbian, Gay, Bisexual, and Transgender Task Force lays bare the devastating realities of employment discrimination for transgender people. Key findings from the report include that transgender respondents experience unemployment at twice the rate of the general population, with rates for

---

[6] Flores, A.R., et al., *How Many Adults Identify as Transgender in the United States?* Williams Institute (2016).

[7] *Id.*

[8] Herman, J.L., et al., *Age of Individuals who Identify as Transgender in the United States*, Williams Institute (2017).

transgender people of color up to four times the national unemployment rate.[9] The report found 90% of respondents reported experiencing harassment or mistreatment on the job.[10] Almost half (47% of respondents) reported experiencing adverse job outcomes, such as being fired, not hired, or denied a promotion because of being transgender/gender non-conforming.[11] Over a quarter (26% of respondents) reported losing a job due to being transgender or gender non-conforming.[12] Fifteen percent (15%) of respondents reported a household income under $10,000/year, nearly four times the rate of this category for the general population.[13] Respondents who reported losing a job due to anti-transgender bias lived at this level of poverty at six times the rate of the general population.[14] In Wisconsin, "[g]reater than a quarter of adult transgender Wisconsinites live in poverty, which is greater than twice the overall national poverty rate. One in five is unemployed." *Flack*, 328 F. Supp. 3d. at 952. "[O]ther than certain races, one would be hard-pressed to identify a class of people more discriminated against historically . . . ." *Id.*

> Research confirms that the pervasive discrimination against transgender individuals in the workforce is mirrored in other areas of public and private life—including schools, housing, healthcare, and public accommodations—and also manifests in high rates of physical and sexual violence. As a result, discrimination in the workplace can have a pernicious snowball effect on people who already face extreme challenges and lack of support outside their jobs.

---

[9] Grant, Jaime M., et al., *Injustice at Every Turn: A Report of the National Transgender Discrimination Survey.* Nat'l. Ctr. for Transgender Equal. and Nat'l Gay and Lesbian Task Force (2011).
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

Amici Curiae Brief for Scholars who Study the Transgender Population in Support of Respondent at 25–26, *Bostock v. Clayton Cnty., Georgia.*, 140 S. Ct. 1731 (2020) (No. 18-107) [hereinafter "Scholars' Brief"].

As the Scholars' Brief illustrates, employment discrimination is directly tied to poverty, homelessness, increased interactions with law enforcement, and negative healthcare outcomes for transgender people. Thus, governmental employers, like the WDOC, have a compelling governmental interest in eliminating employment discrimination against transgender employees. The WDOC appropriately treated Mr. Buhle the same way it treats other male employees. As discussed in Part II, the WDOC's adoption and enforcement of its employment non-discrimination policy for transgender employees is narrowly tailored to serve a compelling governmental interest.

*Amici* also strongly object to Mr. Iyapo's court filings repeatedly misgendering Mr. Buhle. Misgendering a transgender person in legal filings is both highly disrespectful and in conflict with principles of civility in litigation. *See Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 946 (7th Cir. 1997) ("[C]ivility in litigation is extremely important to the practice of law in this Circuit and in all other courtrooms."). Misgendering is an example of the type of discrimination transgender people often face. *See Hecox v. Little*, 2020 WL 4760138, *12 (D. Idaho 2020) ("The Court is concerned by this conduct, as other courts have denounced such misgendering as degrading, mean, and potentially mentally devastating to transgender individuals.").

## II.   THE WDOC HAS A COMPELLING INTEREST IN PREVENTING DISCRIMINATION AGAINST TRANSGENDER EMPLOYEES.

The WDOC has a compelling governmental interest in treating Mr. Buhle like other male corrections officers. Thus, even assuming arguendo that Mr. Iyapo's exercise of religion was substantially burdened by Mr. Buhle's observation of his search, the State meets its burden under RLUIPA, as well as the Free Exercise Clause of the First Amendment.[15] The WDOC's interest goes beyond compliance with laws that bar discrimination against transgender employees: The WDOC has a compelling governmental interest in preventing discrimination against transgender employees to ensure that they avoid stigma and harassment in the workplace.[16] Declining to treat Mr. Buhle differently simply because he is transgender preserves Mr. Buhle's dignity and reinforces his equal status in the workplace and in society.

### A.   The WDOC Has a Compelling Interest in Prohibiting Discrimination Against Transgender Employees.

The Supreme Court has long recognized that governments have a compelling interest in preventing discrimination, which "protects the State's citizenry from a number of serious social and personal harms." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 625 (1984). The "Court has frequently noted that discrimination based on archaic and overbroad assumptions . . . both deprives persons of their individual dignity and

---

[15] Because Mr. Ayupo's RLUIPA claim fails, so does his claim under the First Amendment. *Borzych v. Frank*, 439 F.3d 388, 390 (7th Cir. 2006).

[16] The WDOC has a compelling interest in combatting discrimination against transgender employees, as well as against all employees who face discrimination based on their gender identity, including non-binary and gender nonconforming individuals. This brief focuses on the compelling governmental interest in protecting transgender employees because that is specific to Mr. Buhle, but we acknowledge that the interest extends beyond transgender employees.

denies society the benefits of wide participation in political, economic, and cultural life." *Id.* (citing *Heckler v. Mathews*, 465 U.S. 728, 744–745 (1984); *Mississippi University for Women v. Hogan*, 458 U.S. 718, 723–726 (1982); *Frontiero v. Richardson*, 411 U.S. 677, 684–687 (1973) (plurality opinion)); *see also Masterpiece Cakeshop, Ltd. v. Colo. Civ. Rights Comm'n*, 138 S. Ct. 1719, 1727 (2018); *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733–34 (2014); *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241, 250 (1964) (antidiscrimination laws "vindicate the deprivation of personal dignity that surely accompanies" discrimination (internal quotation mark omitted)). Prohibiting employment discrimination thus reflects "the importance, both to the individual and to society, of removing the barriers to economic advancement and political and social integration that have historically plagued certain disadvantaged groups." *Roberts*, 468 U.S. at 626.

Based on these harms, the Supreme Court has repeatedly held that "acts of invidious discrimination . . . cause unique evils that government has a compelling interest to prevent." *Id.* at 628; *see also N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 14 n.5 (1988) (recognizing the "State's 'compelling interest' in combating invidious discrimination"). In *Bob Jones University v. United States*, 461 U.S. 574 (1983), the Court held that the "[g]overnment has a fundamental, overriding interest in eradicating racial discrimination." *Id.* at 604. Even though the prohibition on discrimination burdened petitioners' exercise of their religious beliefs, the Court held that the "interest substantially outweighs" that burden. *Id.*; *see also Hobby Lobby*, 573 U.S. at 733 ("The Government has a compelling interest

in providing an equal opportunity to participate in the workforce without regard to race, and prohibitions on racial discrimination are precisely tailored to achieve that critical goal.").

Subsequently, in *Roberts*, the Court recognized a compelling governmental interest in prohibiting discrimination based on sex as well. 468 U.S. at 625. The Court observed that the "stigmatizing injury, and the denial of equal opportunities that accompanies it, is surely felt as strongly by persons suffering discrimination on the basis of their sex as by those treated differently because of their race." *Id.*; *see also United States v. Burke*, 504 U.S. 229, 238 (1992) ("It is beyond question that discrimination in employment on the basis of sex . . . is, as . . . this Court consistently has held, an invidious practice that causes grave harm to its victims."); *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 549 (1987) ("Even if the [antidiscrimination law] does work some slight infringement on Rotary members' right of expressive association, that infringement is justified because it serves the State's compelling interest in eliminating discrimination against women."). The Court has since assumed that it is "unexceptional" that the government would protect individuals from discrimination based on other protected bases as well. *See, e.g.*, *Masterpiece Cakeshop*, 138 S. Ct. at 1728 (same-sex couples in accessing public accommodations); *Hobby Lobby*, 573 U.S. at 728 (women accessing cost-free contraception). This Court has likewise affirmed that it "is unquestionably the case" that "the elimination of discrimination is a compelling state interest 'of the highest order.'" *Young v. N. Ill. Conf. of United Methodist*

*Church*, 21 F.3d 184, 185 (7th Cir. 1994) (quoting *Rayburn v. Gen. Conf. of Seventh Day Adventists*, 772 F.2d 1164, 1169 (4th Cir. 1985)).

The Supreme Court has affirmed that discrimination based on sex includes discrimination against transgender people. *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1754 (2020). Accordingly, the widely recognized governmental interest in eliminating discrimination based on sex, *see Roberts*, 468 U.S. at 625, includes an interest in eliminating discrimination against transgender employees. Transgender individuals regularly face discrimination and suffer its negative consequences, as described *supra* Part I. When a transgender employee is fired or otherwise discriminated against in their employment because of their identity, they face far more than economic injuries. *See Heckler*, 465 U.S. at 739 ("[D]iscrimination itself . . . can cause serious non-economic injuries."). "Discrimination is not simply dollars and cents . . . it is the humiliation, frustration, and embarrassment that a person must surely feel when he is told that he is unacceptable as a member of the public . . . ." *Heart of Atlanta Motel*, 379 U.S. at 292 (Goldberg, J., concurring) (internal quotation marks omitted). The WDOC thus has a compelling governmental interest in preventing discrimination against transgender employees—just as it has an interest in prohibiting other forms of employment discrimination.

Other circuits have recognized a compelling governmental interest in combatting discrimination against transgender individuals. For example, the Third Circuit held that preventing discrimination against transgender students serves a compelling government interest. *Doe by & through Doe v. Boyertown Area Sch.*

*Dist.*, 897 F.3d 518, 528 (3d Cir. 2018), *cert. denied sub nom. Doe v. Boyertown Area Sch. Dist.*, 139 S. Ct. 2636 (2019); *see also id.* ("There can be no denying that transgender individuals face discrimination, harassment, and violence because of their gender identity." (internal quotation marks omitted)). And the Sixth Circuit held that the EEOC had a compelling interest in enforcing Title VII's prohibition on employment discrimination against the funeral home that fired Aimee Stephens for being transgender. *EEOC v. R.G. &. G.R. Harris Funeral Homes, Inc.*, 884 F.3d 560, 593 (6th Cir. 2018), *aff'd on other grounds sub nom.*, *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731 (2020). The court concluded that "the EEOC's compelling interest in eradicating discrimination applies with as much force to Stephens as to any other employee discriminated against based on sex." *Id.* at 592. In so doing, the court also rejected the funeral home's request for a religious exemption, in part because "Stephens has been and would be harmed by the Funeral Home's discriminatory practices in this case, and the EEOC has a compelling interest in eradicating and remedying such discrimination." *Id.* at 593.

**B.    The WDOC Has a Compelling Interest in Complying with Legal Protections Against Discrimination in Employment for Transgender People.**

The WDOC's compelling interest in prohibiting discrimination against transgender employees includes an interest in not violating Title VII or the Equal Protection Clause by discriminating against transgender employees.[17] The district

---

[17] Although the WDOC articulated its governmental interest as not violating Title VII or the Equal Protection Clause, this Court need not identify such a narrow governmental interest. As discussed, above, the State has a compelling interest in eradicating discrimination.

court correctly identified that the WDOC's policy to treat all employees consistent with their gender identity stems from a compelling governmental interest in not violating transgender employees' rights under the Equal Protection Clause. Appellant's Br. App. 27–28. However, it erred by holding that they did not have a compelling governmental interest avoiding a violation of Title VII by discriminating against Mr. Buhle in the terms of his employment. Appellant's Br. App. 26. Indeed, the Supreme Court made clear that discrimination against transgender employees violates Title VII. *Bostock*, 140 S. Ct. at 1737; *see also Boyden*, 341 F. Supp. 3d at 997, 1003 (holding employment discrimination against transgender employees violates Title VII and Equal Protection Clause, applying heightened scrutiny).

The district court correctly held that the WDOC had a compelling interest in not violating Mr. Buhle's rights under the Equal Protection Clause. "The Equal Protection Clause of the Fourteenth Amendment 'is essentially a direction that all persons similarly situated should be treated alike.'" *Whitaker*, 858 F.3d at 1050 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also Romer v. Evans*, 517 U.S. 620, 635 (1996). The court correctly reasoned that "Buhle was hired as a male corrections officer and was told that he'd be performing the same duties as other male corrections officers." Appellant's Br. App. 27–28. For the WDOC to then prohibit him from performing or observing strip searches—even due to Mr. Iyapo's religious objections—would have put the WDOC "at risk for a claim that they were discriminating against Buhle based on his transgender status." Appellant's Br. App. 28.

On its own, discrimination based on transgender status should be subject to heightened scrutiny, as transgender individuals have historically faced discrimination. *See supra* Part I; *see, e.g.*, *Karnoski v. Trump*, 926 F.3d 1180, 1201 (9th Cir. 2019); *Stone v. Trump*, 400 F. Supp. 3d 317, 355 (D. Md. 2019); *M.A.B. v. Bd. of Educ. of Talbot Cnty.*, 286 F. Supp. 3d 704, 720–21 (D. Md. 2018); *Grimm v. Gloucester Cnty. Sch. Bd.*, 302 F. Supp. 3d 730, 749–50 (E.D. Va. 2018); *F.V. v. Barron*, 286 F. Supp. 3d 1131, 1145 (D. Idaho 2018); *Evancho v. Pine-Richland Sch. Dist.*, 237 F. Supp. 3d 267, 288 (W.D. Pa. 2017); *Bd. of Educ. v. U.S. Dep't of Educ.*, 208 F. Supp. 3d 850, 872–74 (S.D. Ohio 2016); *Adkins v. City of N.Y.*, 143 F. Supp. 3d 134, 139 (S.D.N.Y. 2015); *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1119 (N.D. Cal. 2015). Further, as this Court has recognized, where a policy treating transgender men differently than other men "cannot be stated without referencing sex," it constitutes a sex-based classification, which is subject to heightened scrutiny. *Whitaker*, 858 F.3d at 1051; *see also, Adams by & through Kasper v. Sch. Bd. of St. Johns Cnty.*, No. 18-13592, 2020 WL 4561817, at *10 (11th Cir. Aug. 7, 2020) (collecting cases). Accordingly, the district court properly rejected Appellant's arguments that the WDOC must "refuse to hire transgender corrections officers" or "prohibit[]such officers from engaging in the routine tasks performed by nontransgender officers," Appellant's Br. App. 28., as it would expose the WDOC to liability for violating Mr. Buhle's equal protection rights.

However, the district court erred in rejecting the WDOC's argument that it has an interest in complying with Title VII. Appellant's Br. App. 25–26. In *Bostock*,

the Supreme Court held that employers who fire someone simply for being transgender violate Title VII. 140 S. Ct. at 1737. The Court explained that Title VII's "message for our cases is equally simple and momentous: An individual's . . . transgender status is not relevant to employment decisions. That's because it is impossible to discriminate against a person for being . . . transgender without discriminating against that individual based on sex." *Id.* at 1741. Although *Bostock* held that employers violated Title VII for *firing* employees based on their gender identity, Title VII's protections extend to adverse actions that impact an employees' terms and conditions of employment, *see* 42 U.S.C. § 2000e-2(a),[18] DOC's policy to treat employees consistent with their gender identity reflects an interest in preventing discrimination against transgender employees.

The district court was concerned that the Supreme Court had not yet ruled on the question of whether Title VII prohibits discrimination against transgender employees, Appellant's Br. App. 25, but the Supreme Court has now held that "no ambiguity exists" as to whether the statutory language of Title VII covers employment discrimination against transgender individuals. *Bostock*, 140 S. Ct. at 1749. Many courts of appeals had already reached that conclusion, as this Court recognized in *Whitaker*, 858 F.3d at 1048–49 (collecting cases). Here as well, the WDOC properly recognized that they had a compelling governmental interest in complying with Title VII and not discriminating against Mr. Buhle for being transgender. Further, the WDOC's interest in not violating Title VII is part of a

---

[18] *See also Porter v. City of Chicago*, 700 F.3d 944, 954 (7th Cir. 2012); *Boyden v. Conlin*, 341 F. Supp. 3d 979, 997 (W.D. Wisc. 2018).

broader compelling governmental interest in combatting unlawful employment

discrimination against workers as a general matter, as "Title VII is central to the

federal policy of prohibiting wrongful discrimination in the Nation's workplaces and

in all sectors of economic endeavor." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570

U.S. 338, 342 (2013); *see also N. Contracting, Inc. v. Ill.*, 473 F.3d 715, 720–21 (7th

Cir. 2007) (finding state entity may rely on federal government's interest in

implementing program under federal law).

### C.     The WDOC's Equal Treatment of Mr. Buhle was the Least Restrictive Means of Furthering Their Interest in Preventing Discrimination Against Transgender Employees.

Mr. Iyapo maintains that, even if the WDOC had a compelling governmental

interest in not discriminating against Mr. Buhle, allowing him to participate in

strip searching Mr. Iyapo was not the least restrictive means to achieve that

interest when there were several other male officers present who could have

conducted the search. Appellant's Br. 6. However, such an accommodation would

require excluding Mr. Buhle from conducting his job duties in the same way as

other male corrections officers. Because the most carefully tailored way to ensure

equal treatment is to prohibit discrimination, declining Mr. Iyapo's request to

discriminate against Mr. Buhle is "precisely tailored" to achieve its interest. *See*

*Riley v. Nat'l Fed'n of the Blind*, 487 U.S. 781, 800 (1988). Every instance of

discrimination "causes grave harm to its victims." *Burke*, 504 U.S. at 238. By

seeking a carve-out, Mr. Iyapo "misperceives the breadth of the compelling interest"

in eliminating discrimination against transgender people: "[T]hough that interest

15

may be implicated to varying degrees in particular contexts, . . . the interest remains." *Wolfson v. Concannon*, 811 F.3d 1176, 1182 (9th Cir. 2016) (internal quotation marks omitted).

Mr. Iyapo's proposed alternative does not just ask that other corrections officers step forward to conduct the strip search, but that Mr. Buhle step back from the official duties that he shares with other male officers. Requiring this differential treatment of Mr. Buhle because he is transgender would single him out before corrections officers and prisoners alike, subjecting him to stigma and potentially disclosing private information. Where the governmental interest is in eradicating discrimination, such a stigmatizing requirement cannot be permitted. *See Boyertown*, 897 F.3d at 527–31 ("Adopting the appellants' position would very publicly brand all transgender students with a scarlet "T," and they should not have to endure that as the price of attending their public school.").

Further, even though the discrimination against Mr. Buhle would be to address West's claim of a violation of his religious liberty, RLUIPA does not authorize religious objectors to harm third parties. "Properly applying RLUIPA, courts must take adequate account of the burdens a requested accommodation may impose on nonbeneficiaries . . . ." *Cutter v. Wilkinson*, 544 U.S. 709, 720 (2005) (citing *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985)). Here, Mr. Iyapo's requested accommodation would require the WDOC to exclude Mr. Buhle from his normal employment responsibilities because he is transgender. Such discrimination harms Mr. Buhle, rendering Mr. Iyapo's requested accommodation unacceptable. *Id.*

at 722 ("Our decisions indicate that an accommodation must be measured so that it does not override other significant interests."); *see also Hobby Lobby,* 573 U.S. at 738 (the "accommodation equally furthers the Government's interest but does not impinge on the plaintiffs' religious beliefs") (Kennedy, J., concurring); *R.G. &. G.R. Harris Funeral Homes*, 884 F.3d at 593 ("declin[ing] to hoist automatically [employer's] religious interests above other compelling governmental concerns" where employee would be harmed by employer's discriminatory practices and there is a "compelling interest in eradicating and remedying such discrimination").

That Mr. Iyapo's sincerely held religious beliefs are in tension with the WDOC's interest in protecting transgender employees from discrimination undoubtedly creates difficulties for him. *See Bob Jones Univ.*, 461 U.S. 574 (religious objection to racial integration); *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402 n.5 (same); *EEOC v. Fremont Christian Sch.*, 781 F.2d 1362 (9th Cir. 1986) (religious belief that only a man could be "head of household" entitled to health insurance as employment benefit). But that does not overcome the WDOC's compelling interest in eradicating employment discrimination against Mr. Buhle and other transgender employees.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Dated: August 24, 2020

Respectfully submitted,

/s/ John A. Knight

Taylor Brown
Lindsey Kaley
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION LESBIAN, GAY, BISEXUAL,
TRANSGENDER AND HIV PROJECT
125 Broad St., 18th Floor
New York, NY 10004
212-549-2500
tbrown@aclu.org
lkaley@aclu.org

John A. Knight
*Counsel of Record*
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION LESBIAN, GAY, BISEXUAL,
TRANSGENDER AND HIV PROJECT
150 N. Michigan Ave., Ste. 600
Chicago, IL 60601
312-201-9740
jaknight@aclu.org

Laurence J. Dupuis
AMERICAN CIVIL LIBERTIES UNION OF
WISCONSIN FOUNDATION
207 E. Buffalo Street, Ste. 325
Milwaukee, WI 53202
414-272-4032
ldupuis@aclu-wi.org

*Attorneys for amici*

## CERTIFICATE OF COMPLIANCE WITH RULE 32

Pursuant to Fed. R. App. P. 32(a)(7)(C), the undersigned counsel for *Amici Curiae* certifies that this brief:

i.　　　complies with the type-volume limitation of Fed. R. App. P. 29(d), Fed. R. App. P. 32(a)(7)(B)(i), and 7th Cir. R. 29 because it contains less than 7,000 words, including footnotes and excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii); and

ii.　　　complies with the typeface requirements of Fed. R. App. P. 32(a)(5) as modified by 7th Cir. R. 32(b) and the style requirements of Fed. R. App. P. 32(a)(6). Dated this 24th day of August, 2020.

/s/ John A. Knight　　　　　　
John A. Knight
*Counsel of record for amici*

## CERTIFICATE OF SERVICE

I hereby certify that on August 24, 2020, I electronically filed the foregoing

BRIEF OF AMICI CURIAE THE AMERICAN CIVIL LIBERTIES UNION

FOUNDATION AND THE AMERICAN CIVIL LIBERTIES UNION OF

WISCONSIN FOUNDATION IN SUPPORT OF DEFENDANTS-APPELLEE'S

JOHN KIND, ET AL., SEEKING AFFIRMANCE OF THE DISTRICT COURTS

ORDER with the Clerk of Court for the Seventh Circuit using the Court's CM/ECF

system, which will accomplish electronic notice and service for all participants who

are registered CM/ECF users.

I further certify that a copy of the above document will be mailed to:

Rufus West, #225213
Green Bay Correctional Institution
P.O. Box 19033
Green Bay, WI 54307-9033

on August, 25, 2020.


/s/ John A. Knight
John A. Knight
*Counsel of record for amici*